UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JUAN MORALES-MARTINEZ, a.k.a.
Juan Martinez-Morales,

        NO. CIV. S-07-0695 FCD DAD

       Petitioner,

   v.

        <u>FINDINGS OF FACT &</u>
        <u>CONCLUSIONS OF LAW</u>

ALBERTO R. GONZALES, Attorney
General,

       Respondent.

----oo0oo----

On April 9, 2007, the Ninth Circuit transferred this petition for review to this court, pursuant to 8 U.S.C. § 1252(b)(5)(B), for a determination of petitioner's nationality claim. Petitioner Juan Morales-Martinez contends that he has derivative citizenship through his mother who was a United States citizen. The sole disputed factual issue between the parties is whether petitioner's mother was physically present in the United States for a period of at least five years after she turned

1

fourteen and before petitioner's birth on March 15, 1959.  On April 1, 2008, the court held an evidentiary hearing and heard the testimony of Simona Gutierres, who testified for petitioner. Having considered the filings of the parties, the administrative record, and the testimony, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT[1]

1. Petitioner Juan Morales-Martinez was born in San Francisco del Oro, Chihuahua, Mexico, on March 15, 1959. (Certified Administrative Record [Docket #31], lodged May 12, 2008, ("A.R.") 996).

2. Petitioner's mother, Josefina Martinez Bernal, was born in San Fernando, California, on March 19, 1926. (Joint Pretrial Statement, Undisputed Facts, ¶ 3(b)).  As a result, she was a United States citizen. (<u>Id.</u> ¶ 3(f)).

3. Petitioner's father, Gabriel Morales Sanchez, was born in Mexico. (<u>Id.</u> ¶ 3(a)).

4. Petitioner's parents were married in Chihuahua, Mexico, on January 7, 1943. (<u>Id.</u> ¶ 3(c)).

5. Petitioner's parents had seven children, five girls and two boys. (Alien File [Docket #8], lodged July 2, 2007, ("A.F.") 1378).

6. Simona Gutierres was the oldest child, and petitioner was the youngest. (<u>Id.</u>)

/////

---

[1]    To the extent any of the court's findings of fact may be considered conclusions of law or vice versa, they are to be considered as such.

2

7.  Simona Gutierres was born on November 1, 1945, in Chihuahua,
    Mexico.  (Hearing Transcript ("H.T.") 5).

8.  Prior to petitioner's birth, his mother had been physically
    present in the United States for at least five years prior
    to attaining the age of fourteen.  (Joint Pretrial
    Statement, Undisputed Facts, ¶ 3(f)).

9.  On August 9, 1997, Morales' mother died in El Paso, Texas.
    (Id. ¶ 3(h)).

**A.   Evidence Relating to Derivative Citizenship**

10. The evidence in the administrative record relating to the
    issue of Morales' mother's physical presence is as follows:
    the testimony before the Immigration Judge of Morales'
    uncle, Roman Martinez, (A.R. 554-85), the testimony before
    the Immigration Judge of Morales' sister, Simona Guitierrez,
    (A.R. 802-17), and declarations and/or letters from friends,
    relatives, and a former employer (A.R. 999-1007).

11. The immigration judge did not make any adverse credibility
    determination in regard to the testimony given by Roman
    Martinez and Simona Gutierres on October 18, 2000 in the
    Immigration Court in San Francisco, California.  (Exhibit D,
    Petitioner's Trial Exhibits, at 83).

12. Simona Guitierrez also testified before the district court
    on April 1, 2008.  The court finds her testimony to be
    credible.

13. Roman Martinez was an older brother of petitioner's mother.
    (A.F. 1363).

14. Roman Martinez was about 12 years older than petitioner's
    mother.  (1930 U.S. Census Record, Exhibit H, Petitioner's

3

1  Trial Exhibits).

2  15.  Before the Immigration Judge, Roman Martinez testified

3  initially that he had no sisters.  (A.R. 565).  He then

4  remembered Morales' mother and went on to say that he was

5  living in El Paso, Texas when she was born, and that she was

6  born in El Paso.  (A.R. 565, 567).  He later corrected

7  himself and testified that his sister was born in

8  California.  (A.R. 570).

9  16.  Roman Martinez could not remember when he and his sister

10  moved from California to Mexico, (A.R. 571), stating

11  initially that it was after World War II, (A.R. 579), but

12  later adding that his family moved to Mexico in 1941, (A.R.

13  579), or 1942, (A.R. 580).  Petitioner's mother would have

14  been approximately 15 or 16 years old at this time.  (See

15  A.R. 585).

16  17.  Later in the hearing, Morales' uncle said that he moved to

17  Mexico when he was thirteen years old, or in 1927.  (A.F.

18  1398).  Petitioner's mother would have been approximately 3

19  years old in 1927.

20  18.  Jesus Martinez, another older brother of petitioner's

21  mother, stated in his declaration, executed on October 2,

22  1999, that petitioner's mother was about 18 or 19 when she

23  went to live in Chihuahua, Mexico and married Gabriel

24  Morales.  (Exhibit C, Petitioner's Trial Exhibits, ¶ 3).

25  19.  Before the Immigration Judge, Simona Gutierres testified

26  that during the period in question, her mother would work in

27  the United States for two to three months, (A.R. 805), and

28  return to Mexico for up to two months, (A.R. 811).  She

4

1   testified that she remembered that this travel pattern
2   started when she was eight or nine years old, (A.R. 804,
3   809), and continued until Morales was born.  (A.R. 806,
4   811).

5   20.  Before this court, Simona Gutierres testified that when she
6        was about 5 or 6 years old, she remembers her father being
7        sad because he had lost everything.  (H.T. 8).

8   21.  Petitioner's father was a well-to-do rancher in Chihuahua,
9        Mexico.  (H.T. 7).

10  22.  There was a drought in Chihuahua, Mexico, that lasted from
11       1948 to 1964.  ("Chihuahua (Mexico) winter-spring
12       precipitation reconstructed from tree-rings, 1657-1992"
13       (2002) (Sara C. Diaz et al., Climate Research 22:237-244),
14       Exhibit F, Petitioner's Trial Exhibits, at 241).

15  23.  The drought of 1952-1957 was the most severe of the 20th
16       century in the Chihuahua area.  (Id.)

17  24.  Foreign Service reports from the American Consulate in
18       Chihuahua in 1952 and 1953 stated that the drought had led
19       to the destitution of the Tarahumara Indians, widespread
20       crop losses, the death of more than 20% of the cattle in
21       northern Mexico and maize imports of an all-time high of
22       350,000 tons.  ("The fifties drought in Sonora - its
23       demographic and economic effects" (David Yetman et al.),
24       Exhibit G, Petitioner's Trial Exhibits, at 10).

25  25.  From the evidence, it is probable that petitioner's father
26       lost his ranch due to the severe drought that hit the
27       northern part of Mexico from 1948 to 1964.

28  /////

26.  Simona Gutierres testified that when she was going to school
     at age six, she barely saw her mother and knew she was
     working doing housekeeping.  (H.T. 10).

27.  Simona Gutierres testified that during her childhood, her
     mother worked away from the family home in Mexico, as a
     housekeeper in El Paso, Texas.  (H.T. 10).  She first
     testified that she remembered speaking to her mother about
     her work when she was about thirteen years old.  (H.T. 11).
     When reminded of her testimony before the Immigration Court,
     Simona Gutierres corrected her testimony before this court
     to reflect that she spoke to her mother about working in the
     United States when she was eight or nine years old.  (H.T.
     11-12).

28.  Simona Gutierres testified that her mother would travel to
     El Paso "sometimes for two or three months."  (H.T. 12).
     Her mother would stay a month upon her return to Mexico and
     then return to El Paso to resume working.  (H.T. 14).  She
     believed this pattern continued until petitioner was born in
     1959.  (H.T. 14).

29.  Simona Gutierres testified that the family ranch in Mexico
     had no electricity, and that she had no memory of whether
     there were any calendars.  (H.T. 17).  When asked how the
     family marked the passage of time without these aids, she
     testified that she remembered special occasions like Easter.
     (H.T. 17).

30.  Simona Gutierres testified that she remembered the specifics
     of her mother's travel patterns because "my mother used to
     bring me clothes."  (H.T. 18).  She also remembered going to

6

1     the bus station and saying good-bye when her mother left the

2     village to go to Texas.  (H.T. 22).

3   31.  Simona Gutierres testified that she did not remember if her

4     mother ever stayed for longer than a month in Mexico.  (H.T.

5     18).  However, asked to recall her mother's pregnancies

6     during the time in question, she testified that her mother

7     had about four pregnancies during the relevant time period,

8     and that she would remain in Mexico to nurse the babies for

9     three to four months each.  (H.T. 19).

10  32.  The joint stipulation submitted by the parties regarding the

11     Morales family birthdays indicates that petitioner's mother

12     gave birth to a child in 1948, 1950, 1952, 1956, and 1957.

13     (Stipulation, filed Apr. 29, 2008).

14  33.  Simona Gutierres testified that she maintained no contact

15     with her mother during the time period in question outside

16     of her visits home; she did not travel to see her and no

17     letters were exchanged.  (H.T. 21).

18  34.  On cross-examination, Simona Gutierres testified that she is

19     a lawful permanent resident of the United States and that

20     she is going to seek citizenship.  (H.T. 16).

21  35.  In a letter dated November, 2000, Gloria Hernandez stated

22     that she employed petitioner's mother as a housekeeper in El

23     Paso, working 1-2 times per week, from 1951 through 1954.

24  **B.**   **Procedural History**

25  36.  On August 11, 1999, Petitioner was served with a Notice to

26     Appear by the former Immigration and Naturalization

27

28

Service,[2] charging him with violation of section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) in that he was convicted of an aggravated felony after admission.  (A.R. 1197).  8 U.S.C. § 1227(a)(2)(A)(iii). This aggravated felony conviction was a May 1992 lewd and lascivious conduct conviction, pursuant to California Penal Code § 288(a).  (A.R. 1197).

37.  Before the Immigration Judge, Petitioner raised a claim of derivative citizenship.  (A.R. 981).

38.  On March 18, 2004, the Immigration Judge ruled that Morales did not meet his burden of establishing derivative citizenship-specifically, that Morales failed to demonstrate that his mother was "[continually physically present] in the United States for the requisite period of time."  (A.R. 496-97).

39.  However, the Immigration Judge did grant discretionary relief under former section 212(c) of the INA.  (A.R. 514).

40.  The government filed a notice of appeal with the Board of Immigration Appeals on the § 212(c) issue, and Morales appealed the derivative citizenship issue.  (A.R. 473-78, 485, 488-92).

41.  The Board ruled on February 9, 2005, dismissing Morales' appeal and sustaining the government's appeal.  (A.R.

---

[2]     On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the newly formed Department of Homeland Security ("DHS").  See Homeland Security Act, 116 Stat. 2135, Pub.L. 107-296 (2002).  The former INS was divided into three separate agencies: United States Immigration and Customs Enforcement; Bureau of Customs and Border Protection; and the United States Citizenship and Immigration Services.

414-16).  Specific to the derivative citizenship issue, the
Board remanded to the Immigration Judge for further
proceedings.

42.  On remand, on June 15, 2005, the Immigration Judge ordered
Morales removed to Mexico.  (A.F. 47).

43.  Morales again appealed to the Board.  The Board dismissed
this appeal on May 12, 2006.  (A.F. 44-46).

44.  Morales filed a petition for review with the Ninth Circuit
on June 9, 2006.  (A.F. 1).  On February 1, 2007, the
government filed an unopposed motion to transfer the
petition to district court for a determination of
citizenship pursuant to 8 U.S.C. § 1252(b)(5)(B).  This
motion was granted and the case transferred on April 9,
2007.

45.  Petitioner is also the subject of a criminal prosecution
pursuant to 8 U.S.C. § 1326, docket number 06-CR-500 FCD;
this prosecution has been suspended pending the resolution
of the nationality matter.

### CONCLUSIONS OF LAW

1.  The court determines petitioner's claim of citizenship de
novo.  8 U.S.C. § 1252(b)(5).

2.  In a deportation proceeding, the government bears the burden
of proving deportability by "clear, unequivocal, and
convincing evidence."  Chau v. INS, 247 F.3d 1026, 1029 n.5
(9th Cir. 2001).

3.  However, once birth in a foreign country is established,
there is a presumption of alienage and the petitioner bears
the burden of establishing, by a preponderance of the

evidence, a valid claim to United States citizenship.  <u>See</u>
<u>Berenyi v. District Director, INS</u>, 385 U.S. 630, 637 (1967);
<u>Alcarez-Garcia v. Ashcroft</u>, 293 F.3d 1155, 1157 (9th Cir.
2002); <u>see also</u> 8 C.F.R. § 341.2(c).

4.   After petitioner produces substantial credible evidence in
support of his claim, the burden of proving deportability by
clear and convincing evidence returns to the government.
<u>Chau</u>, 247 F.3d at 1029 n.5.

5.   In determining derivative citizenship, the Court must apply
the law in effect at the time of petitioner's birth.  <u>See</u>
<u>United States v. Ahumanda-Aguilar</u>, 189 F.3d 1121, 1124 (9th
Cir. 1999) ("The applicable law for transmitting citizenship
to a child born abroad when one parent is a U.S. citizen is
the statute that was in effect at the time of the child's
birth.").

6.   As Morales was born in 1959, the applicable law is former
section 301(a)(7) of the INA, 8 U.S.C. § 1401(a)(7).  That
statute states:

(a)   The following shall be nationals and citizens of
      the United States at birth: . . .

      (7)   a person born outside of the geographical
            limits of the United States and its outlying
            possessions of parents one of whom is an
            alien, and the other a citizen of the United
            States who, prior to the birth of such
            person, was physically present in the United
            States or its outlying possessions for a
            period or periods totaling not less than ten
            years, at least five of which were after
            attaining the age of fourteen years.

INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) (1952).

7.   To meet his burden in this case, Morales must show three
facts.  First, he must establish that his mother, through

10

whom he claims derivative citizenship, was a citizen of the United States.  Second, he must show that his mother was physically present in the United States for at least ten years prior to his birth on March 15, 1959.  Finally, he must show that at least five of those years of physical presence were after his mother turned fourteen years old on March 15, 1940.

8. The parties do not dispute that petitioner's mother was a citizen of the United States or that she way physically present in the United States for at least five years prior to her fourteenth birthday.  Therefore, the sole disputed issue is whether petitioner has met his burden of demonstrating that his mother was physically present in the United States for at least five years after his mother turned fourteen in 1940 and before petitioner was born in 1959.

9. The evidence demonstrates that it is more likely than not that petitioner's mother moved to El Paso Texas when she was approximately 16 years old.  This is consistent with the testimony of Ramon Martinez, the undisputed fact that petitioner's mother spent at least five years in the United States prior to the age of fourteen, and the undisputed fact that petitioner's mother and father were married in Mexico in 1943.

10. Assuming that petitioner's mother moved to Mexico in 1941 when she was fifteen years old, petitioner must demonstrate that his mother was physically present in the United States

/////

1    for at least 4 years or 48 months prior to his birth in

2    1959.

3  11.  The evidence also demonstrates that it is more likely than

4        not that petitioner's mother started going to El Paso,

5        Texas, to work to support the family because of the loss of

6        the ranch due to the drought in approximately 1951 when

7        Simona Gutierres was approximately six years old.  This is

8        consistent with the testimony of Simona Gutierres as well as

9        the letter from Gloria Hernandez.

10 12.  Further, the evidence demonstrates that petitioner's mother

11       was more likely than not in the United States for 8 or 9

12       months a year during the period 1951 to 1958, except those

13       years in which she had a child.  In those years, she

14       probably spent only 6 months in the United States.

15       Therefore, the court finds that it is more likely than not

16       that petitioner's mother was in the United States for the

17       following number of months:

| Year | Low Amount | High Amount |
|------|------------|-------------|
| 1951 | 8 | 9 |
| 1952 | 6 | 6 |
| 1953 | 8 | 9 |
| 1954 | 8 | 9 |
| 1955 | 8 | 9 |
| 1956 | 6 | 6 |
| 1957 | 6 | 6 |
| 1958 | 8 | 9 |
| **Total:** | **58** | **63** |

24 13.  The court holds that the evidence submitted by petitioner

25       demonstrates, by a preponderance of the evidence, that (1)

26       his mother lived in the United States until she was, at

27       youngest, approximately 15 years old (12 months after her

28       fourteenth birthday); and (2) she was physically present in

12

1    the United States, at minimum, for 58 months between 1951

2    and 1958.  Thus, petitioner's mother was physically present

3    in the United States for 70 months, or almost six years,

4    after reaching the age of fourteen.

5  14.  As such, petitioner has met his burden of demonstrating that

6    his mother was physically present in the United States for

7    five years after she turned fourteen years old in 1940 and

8    prior to his birth in 1959.

9  15.  The government makes no argument that it has satisfied its

10    burden of proving, by clear and convincing evidence, that

11    petitioner should be deported.

12  16.  Therefore, petitioner's claim of derivative citizenship

13    through his mother, pursuant to 8 U.S.C. § 1252(b)(5)(B) is

14    GRANTED.

15    IT IS SO ORDERED.

16  DATED: May 23, 2008

17    _____

18    FRANK C. DAMRELL, Jr.
     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28