UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JUAN MORALES-MARTINEZ,

   Petitioner,

 v.

MICHAEL E. MUKASEY, Attorney General,

   Respondent.

NO. CIV. S-07-0695 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter comes before the court on petitioner Juan Morales-Martinez's motion for attorney fees and costs, under the Equal Access to Justice Act ("EAJA"). Respondent opposes petitioner's motion on the ground that the government's position was substantially justified and thus, in accordance with the EAJA's limitations on recovery, no fees should be awarded. Alternatively, respondent argues that if any fees and costs are awarded to petitioner, the court should significantly reduce the amount petitioner requests, awarding no more than attorneys fees for 55 hours of work related to the federal court litigation.

For the reasons set forth below, petitioner's motion for attorney fees is DENIED.[1]

## BACKGROUND[2]

On August 11, 1999, Petitioner was served with a Notice to Appear by the former Immigration and Naturalization Service,[3] charging him with violation of section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) based upon his conviction of an aggravated felony after admission. (Certified Administrative Record [Docket #31], lodged May 12, 2008, ("A.R.") 1197). 8 U.S.C. § 1227(a)(2)(A)(iii). This aggravated felony conviction was a May 1992 lewd and lascivious conduct conviction, pursuant to California Penal Code § 288(a). (A.R. 1197). Petitioner applied for derivative citizenship with the United States Citizenship and Immigration Services ("USCIS"). (A.R. 974). The application was denied. (A.R. 975). Subsequently, the Administrative Appeals Office (the "AAO") of USCIS dismissed the appeal of the denial. (A.R. 975). The AAO's decision stated that a review of all the information in petitioner's file failed

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[2] The facts of this case are set forth more fully in the court's Findings of Fact & Conclusions of Law, filed May 27, 2008. (Findings of Fact & Conclusions of Law [Docket #33], filed May 27, 2008, ("F&C")).

[3] On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the newly formed Department of Homeland Security ("DHS"). See Homeland Security Act, 116 Stat. 2135, Pub.L. 107-296 (2002). The former INS was divided into three separate agencies: United States Immigration and Customs Enforcement; Bureau of Customs and Border Protection; and the United States Citizenship and Immigration Services.

2

to establish the requisite elements for derivative citizenship. (A.R. 976). Specifically, the decision noted that the affidavits from friends and family members were vague and conclusory and that there was no corroborating evidence or independent objective evidence to resolve the inconsistencies in the record. (A.R. 976).

Petitioner raised this claim of derivative citizenship before the Immigration Judge. (A.R. 981). On March 18, 2004, the Immigration Judge ruled that Morales did not meet his burden of establishing derivative citizenship -- specifically, that Morales failed to demonstrate that his mother was "[continually physically present] in the United States for the requisite period of time." (A.R. 496-97). The Immigration Judge noted that while there was additional evidence presented before the court that was not included in the application reviewed by the AAO, the testimony was similarly lacking in specificity and detail, and thus, petitioner failed to meet his burden. (A.R. 496-97). However, the Immigration Judge did grant discretionary relief under former section 212(c) of the INA. (A.R. 514).

The government filed a notice of appeal with the Board of Immigration Appeals on the § 212(c) issue, and Morales appealed the derivative citizenship issue. (A.R. 473-78, 485, 488-92). The Board ruled on February 9, 2005, dismissing Morales' appeal and sustaining the government's appeal. (A.R. 414-16). The Board adopted and affirmed the Immigration Judge's findings with respect to the issue of derivative citizenship and remanded for further proceedings consistent with its decision. (A.R. 414-16).
/////

3

1    On remand, on June 15, 2005, the Immigration Judge ordered
2 Morales removed to Mexico.  (Alien File [Docket #8], lodged July
3 2, 2007, ("A.F.") 47).  Morales again appealed to the Board.  The
4 Board dismissed this appeal on May 12, 2006.  (A.F. 44-46).
5    Morales filed a petition for review with the Ninth Circuit
6 on June 9, 2006.  (A.F. 1).  On February 1, 2007, the government
7 filed an unopposed motion to transfer the petition to district
8 court for a determination of citizenship pursuant to 8 U.S.C. §
9 1252(b)(5)(B).  This motion was granted and the case transferred
10 on April 9, 2007.
11    On April 1, 2008, the court held an evidentiary hearing and
12 heard the testimony of Simona Gutierres, petitioner's sister.
13 (F&C at 1).  Petitioner also presented evidence relating to the
14 drought in Chihuahua, Mexico, where petitioner's mother and
15 father were living, that lasted from 1948 to 1964.  (F&C at 5).
16 The sole disputed factual issue between the parties was whether
17 petitioner's mother was physically present in the United States
18 for a period of at least five years after she turned fourteen and
19 before petitioner's birth on March 15, 1959.  (F&C at 1)  The
20 court found that the evidence submitted by petitioner
21 demonstrated, by a preponderance of the evidence, that (1) his
22 mother lived in the United States until she was, at youngest,
23 approximately 15 years old (12 months after her fourteenth
24 birthday in 1940); and (2) she was physically present in the
25 United States, at minimum, for 58 months between 1951 and 1958.
26 (F&C at 12-13).  Thus, petitioner's mother was physically present
27 in the United States for 70 months, or almost six years, after
28 reaching the age of fourteen.  (F&C at 13).  As such, the court

4

held that petitioner had met his burden of demonstrating that his mother was physically present in the United States for five years after she turned fourteen years old in 1940 and prior to his birth in 1959. (F&C at 13).[4] Therefore, petitioner's claim of derivative citizenship through his mother, pursuant to 8 U.S.C. § 1252(b)(5)(B) was granted. (F&C at 13).

## ANALYSIS

Under the EAJA, a court "shall award" attorney fees, costs and other expenses to a "prevailing party" in a civil action "brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In the absence of a statutory definition, a plaintiff is a "prevailing party" for purposes of the EAJA if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." See United States v. Real Property Known as 22249 Dolorosa Street, 190 F.3d 977, 981 (9th Cir. 1999) (internal citations and quotation marks omitted).

The parties do not dispute that petitioner is a prevailing party under the EAJA. Rather, the government contends that fees

---

[4] The court notes that in reviewing its prior order, it discovered a typographical error in ¶ 9 of its Conclusions of Law. (F&C at 11). The court mistakenly stated that "it is more likely than not that petitioner's mother moved to El Paso Texas when she was approximately 16 years old." (Id.) The order should reflect that the evidence demonstrated that it is more likely than not that petitioner's mother moved to *Mexico* when she was approximately 16 years old. This is consistent with the other findings of fact and conclusions of law made by the court.

5

should not be awarded in this case because it was substantially justified in its underlying action and in its subsequent litigation position.

Even if a party prevails in a civil action against the United States, as required by the EAJA for recovery, a plaintiff is not entitled to attorney fees, costs and other expenses in a civil action against the United States, if the government, bearing the burden of proof, demonstrates that its position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A); see Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir. 1988). The government's position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988); Barry, 825 F.2d at 1330. "Substantial justification is equated with reasonableness[;] [t]he government's position is substantially justified if it has a reasonable basis in law and fact." Thangaraja v. Gonzales, 428 F.3d 870, 874 (9th Cir. 2005) (internal quotations and citations omitted).[5]

The Ninth Circuit applies the "totality of circumstances" test, requiring that the court conduct a two-part inquiry in determining whether the government's position was substantially justified. League of Women Voters v. FCC, 798 F.2d 1255, 1258 (9th Cir. 1986). First, the court must determine "whether the government was substantially justified in taking its original

---

[5] The Supreme Court has specifically rejected the argument that the EAJA's 1985 legislative history implicates a more stringent standard of justification than reasonableness. Pierce, 487 U.S. at 565; Kali v. Bowen, 854 F.2d 329, 332 (9th Cir. 1988).

6

action." United States v. Marholf, 277 F.3d 1156, 1161 (9th Cir. 2002) (citations and quotations omitted).  Second, the court must determine "whether the government was substantially justified in defending the validity of the action in court."  Id. Importantly, "that the government lost [on a claim] does not raise a presumption that its position was not substantially justified."  Oregon Envtl. Council v. Kunzmam, 817 F.2d 484, 498 (9th Cir. 1987) (citing In re Hill, 775 F.2d 1037, 1040 (9th Cir. 1985)).

    The original government action in this case was the refusal to administratively grant petitioner's citizenship claim by the USCIS.  Furthermore, the decisions of the Immigration Judge and Board of Immigration Appeals are also actions "by the agency upon which the civil action is based."  Thangaraja, 428 F.3d at 873-74 (noting that both the Immigration Court and the Board of Immigration Appeals are within the executive branch and thus, their decision constitute the "position of the United States" for purposes of the statute, regardless of the manner in which responsibilities are divided within the executive branch). Therefore, the court must consider the reasonableness of these decisions in addition to the litigation position of the government.

    **A.   The Government's Original Action**

    Petitioner contends that USCIS's decision to deny the application and then dismiss petitioner's appeal lacked a reasonable basis in both law and fact because the agency based its decision on an incorrect determination that petitioner had to submit certain documentary evidence in support of his

7

application.  Petitioner also contends that the Immigration Judge, and the Board of Immigration Appeals which adopted the Immigration Judge's analysis of the derivative citizenship claim, similarly and incorrectly based the denial of petitioner's claim on the lack of documentary corroboration.

Petitioner relies solely on the Ninth Circuit's decision in <u>Vera-Villegas v. I.N.S.</u>, 330 F.3d 1222 (9th Cir. 2003), in support of his assertion that the decisions of USCIS, the Immigration Judge, and the Board of Immigration Appeals lacked a reasonable basis in both law and fact.  In <u>Vera-Villegas</u>, the Ninth Circuit held that if the oral and written testimony offered by petitioner is otherwise sufficient to meet the burden of proof, a lack of corroborating documentary evidence is not an adequate basis for rejecting a petitioner's application.  <u>Id.</u> at 1234.  The petitioner in <u>Vera-Villegas</u> testified under oath about his presence in the United States, and the Ninth Circuit found that nothing in the record supported the rejection of his testimony.  <u>Id.</u> at 1231.  The petitioner also proffered the testimony of a number of witnesses.  <u>Id.</u> at 1232.  While the Ninth Circuit noted that some of the testimony and affidavits may have lacked a certain degree of specificity, the sheer number of witnesses that could attest to the basic facts should have been considered by the Immigration Judge in weighing credibility.  <u>Id.</u> The Ninth Circuit noted that petitioner had "presented an unusually strong case for suspension of deportation" and explained that "[w]hile contemporaneous documentary evidence may add to the credibility of a witness, it is by no means indispensible."  <u>Id.</u> at 1229, 1234.  Therefore, in light of the

evidence presented by petitioner in support of his claim, the Ninth Circuit found that he had met his burden.

However, the facts before the Vera-Villegas court are markedly different from the facts petitioner presented to the USCIS, the Immigration Judge, and the Board of Immigration Appeals. In Vera-Villegas, the gravamen of the issue was petitioner's own continued presence in the United States; petitioner was able to offer his own testimony to provide a relatively complete account of such presence. Id. at 1226-28. In this case, the gravamen of the issue was petitioner's mother's presence in the United States from the age of 14 until petitioner's birth; petitioner could not offer a complete first-hand account of his mother's residency or travel. Petitioner did not offer this type of evidence from any witness. In Vera-Villegas, petitioner submitted numerous witnesses and affidavits to corroborate his own testimony. Id. at 1226, 1228-29. In this case, petitioner submitted a handful of vague affidavits to USCIS as the primary evidence of his mother's presence. The majority of these affidavits merely stated the age when petitioner's mother moved to Mexico from the United States without any explanation regarding the basis for such knowledge or surrounding circumstances. While petitioner also offered testimony of witnesses at the hearing, such witnesses did not provide substantially more information to support their assertions of when petitioner's mother was in the United States. Most importantly, in Vera-Villegas, the Ninth Circuit found that the petitioner's application was denied on the basis of lack of contemporaneous documentary evidence, despite otherwise

9

sufficient oral and written testimony.  In this case, USCIS, the Immigration Judge, and the Board of Immigration Appeals denied petitioner's application on the basis of lack of sufficient oral and written testimony, not on the lack of documentary evidence alone.  Therefore, the underlying government conduct was not based upon an incorrect application of Ninth Circuit law.

Moreover, the court notes that the evidence and record presented before it at the evidentiary hearing still presented a close case regarding whether petitioner had met his burden. However, Simona Gutierres, petitioner's sister who also testified before the Immigration Judge, was able to further elaborate upon and clarify her testimony.  She provided more details with respect to her memories regarding her mother's work in the United States when she was a child and before her brother was born. Gutierres also testified that their father was a cattle rancher in Chihuahua, Mexico, and that the drought in the region cause his father to lose everything when she was five or six years old. This testimony, along with the independent, objective evidence relating to the drought in the region that lasted from 1948-1964, offered credibility and specificity to the otherwise vague evidence previously submitted to the government in the underlying proceedings.  Therefore, looking at all the evidence before it, on balance, the court held that petitioner had met his burden.

As such, based upon the evidence before them, the USCIS, the Immigration Judge, and the Board of Immigration Appeals were substantially justified in their determinations.

/////

/////

10

### B.    The Government's Litigation Position

Petitioner also contends that the government's litigation position lacked a reasonable basis in both law and fact because it mischaracterized the testimony of Simona Gutierres before the Immigration Judge. Specifically, petitioner asserts that the government represented to the court that Gutierres' testimony demonstrated petitioner's mother *started* to work in El Paso, Texas when Gutierres was 8 or 9, but that the testimony actually only reflects that Gutierres was 8 or 9 when she *remembers* her mother leaving to work in El Paso.

Petitioner's contention is without merit. The government's interpretation of Gutierres' testimony before the Immigration Judge had a reasonable basis in fact. Gutierres did not testify at the immigration hearing that there was a distinction between when she remembered her mother working in Texas and when her mother started working in Texas. Rather, this testimony was clarified during the evidentiary hearing before the court. Gutierres testified that she talked to her mother about working in El Paso, Texas when she was eight or nine years old. However, she also testified that before that time, her grandfather and aunts took care of her after school when she was six years old and that her mother was often away. She further testified that when she was five or six years old, her father lost the ranch. As such, it was not until Gutierres' testified at the evidentiary hearing and until evidence was submitted regarding the drought that the distinction between her mother's travel to El Paso and Gutierres' remembrance of the conversation with her mother about this travel became apparent. Therefore, the government was

11

1  substantially justified in its litigation position regarding
2  Gutierres' testimony before the Immigration Judge.

### CONCLUSION

A review of the record in this case, looking at the totality of the circumstances, demonstrates that the government was substantially justified in both its underlying action and subsequent litigation position.  As such, and for the foregoing reasons, petitioner's motion for attorney's fees pursuant to the EAJA is DENIED.

IT IS SO ORDERED.

DATE: August 6, 2008

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE